UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHAUNTA M. RICHARDSON,

    *Plaintiff*,

v.

NATIONAL RAILROAD PASSENGER CORPORATION,

    *Defendant*.

Civil Action No. 24-2517 (SLS)

Judge Sparkle L. Sooknanan

**MEMORANDUM OPINION**

Shaunta Richardson filed this lawsuit against her former employer, the National Railroad Passenger Corporation (Amtrak), alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the District of Columbia Human Rights Act. Amtrak has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons that follow, the Court denies the motion in part and grants it in part. Ms. Richardson's discrimination claims and her retaliation claim under 42 U.S.C. § 1981 survive the Defendant's motion.

**BACKGROUND**

**A.  Factual Background**

The Court draws the facts, accepted as true, from the Plaintiff's Complaint. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023). The Court also takes judicial notice of Ms. Richardson's complaint filed with the Equal Employment Opportunity Commission (EEOC), which Amtrak attached to its motion. *See* Mot. Dismiss, Ex. A, ECF No. 9-2; *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 272 (D.D.C. 2011) ("A court may consider an EEOC complaint and Notice of Charge without converting a motion to dismiss into a motion for

summary judgment because such records are public documents of which a court may take judicial notice." (cleaned up)).

Ms. Richardson joined Amtrak as a police officer in January 2012. Compl. ¶ 29, ECF No. 1. She excelled in the role, earning "Officer of the Year" in 2018, an award given to "only one police officer in all of Amtrak's operations nationwide each year." *Id.* ¶ 30. The same year, she was promoted to Patrol Sargeant. *Id.* ¶ 31. But in January 2023, things took a turn when Ms. Richardson reported mistreatment by Captain Dawn Cook, "one of her immediate commanders," to two members of the Amtrak Police union and her immediate supervisor. *Id.* ¶ 32. She reported "intimidation and differential treatment" from Captain Cook "in comparison to a comparable white male Amtrak police officer named David Brooks[.]" *Id.* After filing that report, Ms. Richardson was "subjected to a stream of negative actions by Captain Dawn Cook," including "denial of employment opportunities, forced work when injured, unwarranted criticisms, coerced transfer of work assignments, letters of instruction, . . . and, ultimately, termination[.]" *Id.* ¶ 33.

In February 2023, Ms. Richardson injured her left hand while at work, which required surgery. *Id.* ¶ 42. While she was out on approved "injury on duty" leave, Captain Cook "approved docking [her] pay for 72 hours of missed time." *Id.* ¶¶ 43–44. The same month, Captain Cook refused to allow her to postpone a firearms training, which required utilizing her injured left hand. *Id.* ¶ 45. A police sergeant informed Ms. Richardson that Captain Cook "was the supervisor who did not allow" her to postpone the training. *Id.* ¶ 46. Captain Cook then "refused to allow [Ms. Richardson] to take on light administrative duty in the form of a week-long detail in California that was scheduled for April 2023[.]" *Id.* ¶ 47.

In March 2023, an Amtrak inspector named Victor Green informed Ms. Richardson that Captain Cook had filed a complaint regarding her "holding external employment" and "booking

2

clients for a hair styling business while on duty at Amtrak." *Id.* ¶¶ 34, 38. Captain Cook had "stated or implied that certain pictures on Instagram of Plaintiff braiding her own hair and her children's hair, were pictures of Plaintiff's hair clients and that such activities occurred while Plaintiff was on duty at Amtrak, which was not true." *Id.* ¶¶ 36, 38. The same month, Ms. Richardson learned that she passed the "promotional [Sargeant's exam] with the second highest score out of 54 test takers and had scored the highest of any of the Washington, D.C. test takers." *Id.* ¶ 91.

Three incidents then led to disciplinary action against Ms. Richardson. First, in August 2023, a group of intoxicated females entered the station and Ms. Richardson "raised her voice a little bit" to warn them about blood on the floor. *Id.* ¶¶ 57–58. One of the individuals complained that Ms. Richardson was "rude to her regarding a medical call." *Id.* ¶ 57. Second, in November 2023, Ms. Richardson and other officers restrained an individual in a wheelchair who "made incomprehensible and belligerent demands to Amtrak employees" and "grabbed [Ms. Richardson's] hand aggressively[.]" *Id.* ¶¶ 62–65. "[T]he man fell out of the wheelchair, grabbing [Ms. Richardson] and pulling her down and, in the process, grabbing her vest, body camera, and radio microphone, and swinging his hands aggressively at her face." *Id.* ¶ 66. Ms. Richardson put the man, whose face was bloody, in handcuffs and asked another individual to call an ambulance. *Id.* ¶¶ 67–69. A use of force investigation later found that Ms. Richardson's "actions were justified, and that there was no violation of any Amtrak Police rule or procedure for restraining a person in such circumstances." *Id.* ¶ 72. But later, another use of force panel that included Captain Cook convinced the investigator to "renege his position," and the investigator "changed his vote to 'unjustified and not within policy' with no explanation whatsoever." *Id.* ¶ 74. Finally, in January 2024, a "black female patron made several threats to cause Amtrak Police Officers bodily harm and resisted being handcuffed." *Id.* ¶ 75. Ms. Richardson, also an African-

3

American woman, *id.* ¶ 10, "used two mild phrases that, in the black community, are known to refer to being loud and obnoxious and unruly in a public place" and "to a certain type of shoes[.]" *Id.* ¶ 76. Amtrak interviewed Ms. Richardson about the incident, and she was "taken out of service." *Id.* ¶¶ 77–78. Amtrak listed the charge as "rudeness and use of force." *Id.* ¶ 78.

On March 13, 2024, Amtrak conducted a disciplinary hearing to review all three incidents. *Id.* ¶ 79. Ms. Richardson's union argued that Amtrak "did not engage in proper procedures and investigation in regard to these incidents" and "did not follow proper grievance procedures, including failing to meet filing deadlines." *Id.* ¶¶ 80–81. For example, prior to the March 2024 hearing, neither Ms. Richardson nor her union were told that two of the earlier incidents were "the subject of further investigations," which represents a "violation of the collective bargaining agreement's Rule 34B." *Id.* ¶¶ 83–84. Furthermore, Amtrak "refused to produce" and "did not preserve" body camera footage from "those present at the incidents[.]" *Id.* ¶ 85. After the Amtrak Police Department Use of Force Panel reviewed the August 2023, November 2023, and January 2024 incidents, *id.* ¶¶ 86, 88–89, it suspended Ms. Richardson for five days, *id.* ¶ 86, and then "discharged [her] from her Amtrak employment, 'effective immediately,'" *id.* ¶¶ 88–89. According to Ms. Richardson, this was in stark contrast to Amtrak's treatment of a white male Amtrak police officer, Sergeant Kevin Dauphin, who "made racial slurs in the presence of an African-American Amtrak Police Officer." *Id.* ¶ 87. Despite the fact that this was "reported to Amtrak Police Commanders," absolutely "no discipline was imposed on Sargeant Dauphin." *Id.*

Ms. Richardson appealed the disciplinary actions to the Public Law Board. *Id.* ¶ 90. Ms. Richardson also "formally complained to Amtrak" about Captain Cook's conduct at least three times between January 5, 2023[,] and May 18, 2023." *Id.* ¶ 93. And she "timely filed a charge of race and gender discrimination" with the EEOC "on or about May 22, 2024, which was cross-filed

4

to the District of Columbia Office of Human Rights." *Id.* ¶ 9. She ultimately filed this lawsuit "with[in] 90 days of receipt of a Notice of Right to Sue from the EEOC," dated June 2, 2024. *Id.*

Amtrak's actions have caused Ms. Richardson "great mental, emotional, and physical harm, including but not limited to embarrassment, emotional distress, humiliation, indignity, anxiety, and resulting injury and loss[.]" *Id.* ¶ 95. And Ms. Richardson lost a promotion opportunity because of "disciplinary papers in her file for the incidents and matters described above[.]" *Id.* ¶ 92. She has "fully mitigated her damages" by "taking reasonable measures to seek employment to replace her lost wages as a result of her unlawful termination." *Id.* ¶ 96.

### B.     Procedural Background

On August 31, 2024, Ms. Richardson filed the instant lawsuit, alleging six counts of racial discrimination and retaliation. *See* Compl. ¶¶ 97–177. In Count 1, Ms. Richardson alleges that Amtrak violated Title VII of the Civil Rights Act of 1964 by subjecting her to racial discrimination. *Id.* ¶¶ 97–107. In Count 2, she alleges that Amtrak intentionally retaliated against her based on protected activity in violation of Title VII. *Id.* ¶¶ 108–18. In Count 3, she alleges racial discrimination under 42 U.S.C. § 1981. *Id.* ¶¶ 119–30. In Count 4, she alleges intentional retaliation in violation of 42 U.S.C. § 1981. *Id.* ¶¶ 131–40. In Count 5, she alleges race discrimination under the District of Columbia Human Rights Act (DCHRA), §§ 2-1401.01–2-1401.04. *Id.* ¶¶ 141–63. And in Count 6, she alleges retaliation under the DCHRA, § 2-1402.61. *Id.* ¶¶ 164–77. The Defendant moved to dismiss on December 16, 2024, urging dismissal under Federal Rule of Civil Procedure 12(b)(6). *See* Def.'s Mot. Dismiss (Mot. Dismiss), ECF No. 9. The matter is now fully briefed. *See* Pl.'s Opp'n, ECF No. 16; Def.'s Reply, ECF No. 18.

## LEGAL STANDARD

To survive a Rule 12(b)(6) challenge, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gilliard v. Gruenberg*, 302 F. Supp. 3d 257, 274 (D.D.C. 2018); *see also Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) ("A claim crosses from conceivable to plausible when it contains factual allegations that, if proved, would 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (quoting *Iqbal*, 556 U.S. at 678)). This requires "more than a sheer possibility that a defendant has acted unlawfully[.]" *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Amtrak argues that all six claims should be dismissed under Rule 12(b)(6). The Court agrees that the Title VII and DCHRA retaliation claims fail. But Ms. Richardson has adequately pleaded discrimination under Title VII, the DCHRA, and Section 1981, and retaliation under Section 1981. Amtrak describes the underlying allegations as "implausible, speculative, and unsupported[.]" Reply at 1. But accepting Mr. Richardson's allegations as true, as it must, the Court finds that these claims survive dismissal at this early stage.[1]

---

[1] Although Amtrak construes the Complaint as including a hostile work environment claim, *see* Mot. Dismiss at 8–11, Ms. Richardson clarified that her Complaint "does not set forth explicitly a cause of action using the term 'hostile work environment'" and that she "intends to move to file an Amended Complaint to include" such a claim. Pl.'s Opp'n at 17 n.2. But Ms. Richardson never filed that motion, so the Court will not proceed down that path. *See de Csepel v. Republic of Hungary*, 714 F.3d 591, 598 (D.C. Cir. 2013) (noting that "plaintiffs are 'masters of the complaint' with the power to bring those claims they see fit" (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 395 (1987))); *see also Sabra ex rel. Baby M v. Pompeo*, 453 F. Supp. 3d 291, 314 n.9 (D.D.C. 2020) (declining to "construe the operative complaint as asserting [an APA claim]" when "[the plaintiff], as the master of the complaint, did not assert [that claim]").

A.      **Discrimination (Counts 1, 3, and 5)**

Ms. Richardson first alleges race discrimination in violation of Title VII, *see* Compl. ¶¶ 97–107, Section 1981, *id.* ¶¶ 119–130, and the DCHRA, *id.* ¶¶ 141–163. Title VII makes it unlawful to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). Section 1981 prohibits racial discrimination in the making and enforcement of contracts, guaranteeing all persons the same contractual rights as white citizens. *See* 42 U.S.C. § 1981(a). And Section 2-1402.11(a) of the DCHRA prohibits D.C. employers from discriminating against individuals on the basis of race in hiring, firing, compensation, or other terms and conditions of employment. *See* D.C. Code § 2-1402.11(a).

1.      **Timeliness**

At the threshold, the Defendant urges the Court to dismiss claims relating to events that occurred prior to May 28, 2023, because both Title VII and DCHRA "impose statutory filing obligations on employees" that Ms. Richardson has not met. Mot. Dismiss at 4. Title VII requires an employee to file a charge within 300 days of the alleged discriminatory acts. *See* 42 U.S.C. § 2000e-5(e)(1) (a charge must be filed "three hundred days after the alleged unlawful employment practice occurred"). And the DCHRA requires an employee to file a complaint within one year of the alleged discriminatory acts. *See* D.C. Code § 2-1403.16(a) (a complaint must be filed "within one year of the unlawful discriminatory act, or the discovery thereof," and the "timely filing of a complaint . . . shall toll the running of the statute of limitations while the complaint is pending"). Ms. Richardson filed an EEOC charge on May 22, 2024. So the Court agrees that she may only pursue Title VII claims for conduct that occurred on or after August 2, 2023, and DCHRA claims

7

for conduct that occurred on or after May 28, 2023. Any other conduct cannot form the basis for her Title VII and DCHRA claims before this Court.

Ms. Richardson invokes the doctrine of "equitable tolling" to argue otherwise. Pl.'s Opp'n at 16–17. But equitable tolling does not help her. Equitable tolling applies when a party "has been pursuing his rights diligently" and "some extraordinary circumstance stood in his way." *Robinson v. Dep't of Homeland Sec. Off. of Inspector Gen.*, 71 F.4th 51, 58 (D.C. Cir. 2023) (cleaned up). An "extraordinary circumstance" must be one that is "beyond [the litigant's] control," *Menominee Indian Tribe of Wisconsin v. United States*, 764 F.3d 51, 58 (D.C. Cir. 2014), aff'd, 577 U.S. 250 (2016), and is not "a product of that litigant's own misunderstanding of the law or tactical mistakes in litigation," *Young v. SEC*, 956 F.3d 650, 655 (D.C. Cir. 2020). Ms. Richardson presents no facts to suggest extraordinary circumstance caused the delay, much less that it resulted from circumstances beyond her control.[2]

Amtrak does not assert any timeliness defense to Ms. Richardson's Section 1981 claims. *See* Mot. Dismiss at 13–15. For good reason. Section 1981 "does not contain its own statute of limitations period." *Harris v. Perini Corp.*, 948 F. Supp. 4, 5 (D.D.C. 1996). Instead "federal courts apply 'the most appropriate or analogous state statute of limitations to claims based on asserted violations of § 1981,'" *Newman v. Amazon.com, Inc.*, No. 21-cv-531, 2022 WL 971297, at *5 (D.D.C. Mar. 31, 2022) (quoting *Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369, 371 (2004), and "[i]n the District of Columbia, the applicable statute of limitations is three years," *Kargbo v. Nat'l R.R. Passenger Corp.*, 243 F. Supp. 3d 6, 10 (D.D.C. 2017) (citing D.C. Code § 12-301(8)).

---

[2] Ms. Richardson also raises the "continuing violation" doctrine in response to the Defendant's timeliness arguments. Pl.'s Opp'n at 17–18. But she makes this argument about "a hostile work environment claim," *id.* at 17, which she says she did not bring, *see supra*, at 6 n.1.

### 2. Merits

Turning to the merits, courts evaluate all three discrimination claims under the Title VII standard. *See Burt v. Nat'l Republican Club of Capitol Hill*, 828 F. Supp. 2d 115, 122 (D.D.C. 2011) (noting that "in addressing employment discrimination claims under [42 U.S.C. § 1981 and the DCHRA], courts look to the jurisprudence surrounding Title VII"); *see also Johnson v. Dong Moon Joo*, No. 01-cv-0004, 2006 WL 627154, at *19 (D.D.C. Mar. 12, 2006) (using the Title VII framework as a "a short-hand reference" when analyzing claims brought under the DCHRA and 42 U.S.C. § 1981). A Title VII plaintiff must show (1) that she belongs to a protected class, (2) that she suffered an adverse employment action, and (3) that a causal connection exists between her protected characteristic and the adverse employment action. *See Caison v. Tulino*, No. 23-cv-2414, 2025 WL 947470, at *4 (D.D.C. Mar. 28, 2025) (citing *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008)). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff is "not required to plead every fact necessary to establish a *prima facie* case" but must instead "plead sufficient facts to show a plausible entitlement to relief." *Bartlette v. Hyatt Regency*, 208 F. Supp. 3d 311, 322 (D.D.C. 2016) (cleaned up). Ms. Richardson has plausibly alleged all three elements of her discrimination claims under Title VII, the DCHRA, and Section 1981.

#### a. Protected Class

Amtrak does not contest that Ms. Richardson, who is African American, Compl. ¶ 10, is part of a protected class.

#### b. Adverse Employment Action

Ms. Richardson points to adverse employment actions in the form of "discriminatory discipline, denial of promotional opportunities, and discriminatory termination." Compl. ¶¶ 99, 143. She also alleges "discriminatory termination of employment and inability to maintain and

9

enforce a contract to the same degree as is enjoyed by white citizens, including to perform her job duties as an Amtrak employee under a contract." *Id.* ¶ 121.[3] Unsurprisingly, Amtrak does not contest that Ms. Richardson's termination is an adverse employment action. Mot. Dismiss at 6–7; *see also Douglas v. Donovan*, 559 F.3d 549, 554 (D.C. Cir. 2009) (describing "termination" as an "obvious" adverse employment action). It argues only that the alleged discriminatory discipline and denial of promotional opportunities do not represent a "significant change" in Ms. Richardson's employment. Mot. Dismiss at 6.

But Amtrak relies on precedent that no longer holds. The Supreme Court recently rejected the rule that the harm an employee suffers must be "significant," "[o]r serious, or substantial, or any similar adjective suggesting that the disadvantage . . . must exceed a heightened bar" for there to be an adverse employment action. *Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346, 355 (2024). Instead, an employee need only show "some harm" with respect to "an identifiable term or condition of employment." *Id.* at 354–55. *Muldrow* aligned with the D.C. Circuit's holding in *Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022), decided two years earlier. *See Muldrow*, 601 U.S. at 353 n.1 (describing *Chambers* as "overruling precedent that demanded an 'objectively tangible harm' and rejecting a 'material adversity' requirement" (quoting *Chambers*, 35 F.4th at 876–77)). Applying *Muldrow* and *Chambers*, Ms. Richardson has plausibly alleged adverse employment actions.

Starting with discriminatory discipline, Ms. Richardson alleges a host of disciplinary steps that Amtrak took, including "a verbal warning" and "letter of counseling" related to tardiness, Compl. ¶¶ 53–54, and a "notice of discipline" regarding her alleged "derogatory" statement to a

---

[3] The Court does not consider Ms. Richardson's alleged adverse actions that are time-barred. *See supra* at 7–8.

10

citizen, *id.* ¶ 59. "Even post-*Chambers* (and post-*Muldrow*), courts have found that to be considered an adverse employment action, a letter of reprimand must lead to some deleterious change in the terms, conditions, or privileges of employment." *Wilson v. Noem*, No. 20-cv-100, 2025 WL 1000666, at *24 (D.D.C. Apr. 3, 2025) (collecting cases). But a "formal reprimand can be an adverse action . . . if it serves as 'a building block' that justifies an adverse action down the road," *id.* (cleaned up), and Ms. Richardson alleges that her disciplinary record led to her ultimate termination, *see* Compl. ¶¶ 88, 92. In the end, the link between the disciplinary steps and her termination "may ultimately be found too tenuous," *Robb v. Vilsack*, No. 20-cv-0929, 2021 WL 3036796, at *13 (D.D.C. July 19, 2021), but her allegations are sufficient at this stage.

Ms. Richardson next alleges that she was passed over for a promotion to Sergeant because of disciplinary history. *See* Compl. ¶ 92 ("Plaintiff has . . . missed out on promotion opportunities to Sergeant due to the existence of disciplinary papers in her file for the incidents and matters described above, that precluded or suppressed consideration of her for promotions that would have come after passing the Sergeant's exam."). Amtrak argues that Ms. Richardson's "Complaint fails to describe with any detail whatsoever any alleged 'denial of promotional opportunities.'" Mot. Dismiss at 6, n.5 (citing Compl. ¶ 99). But Ms. Richardson does provide details, noting that she passed the promotional test with the "second highest score out of 54 test takers" and "scored the highest of any of the Washington D.C. test takers," yet still did not receive a promotion to Sergeant. Compl. ¶¶ 91–92. These allegations are sufficiently detailed at the motion to dismiss stage to sustain a claim for failure to promote, a workplace act that has long been recognized as adverse under Title VII, *see Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, [or] failing to promote[.]"); *see also Perry v. Donovan*, 733 F. Supp. 2d 114, 119

11

(D.D.C. 2010) ("Plaintiff correctly argues there is an adverse employment action if the employee is denied an opportunity for promotion[.]").

### c. Causation

Turning to causation, Ms. Richardson alleges disparate treatment by pointing to a comparator, Sergeant Kevin Dauphin, "a white male Amtrak police officer" who "made racial slurs in the presence of an African-American Amtrak Police Officer" and faced "no discipline." Compl. ¶ 87. Amtrak argues that Sergeant Dauphin is not similarly situated. Mot. Dismiss at 8. The Court disagrees.

A plaintiff alleging Title VII discrimination can prevail by showing that the protected characteristic was either a "but-for cause" of the adverse employment action or a "motivating factor" in the adverse action. *See Ponce v. Billington*, 679 F.3d 840, 844 (D.C. Cir. 2012) ("In addition to the but-for standard, 42 U.S.C. § 2000e–2(m) provides that 'an unlawful employment practice is established when . . . race, color, religion, sex, or national origin was *a motivating factor* for any employment practice.'" (citing 42 U.S.C. § 2000e–2(m))). And at the motion to dismiss stage, a plaintiff is not required to plead a prima facie case. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) (referring to the prima facie framework as "an evidentiary standard, not a pleading requirement"). Instead, the question is whether the facts plausibly suggest that a prima facie case could later be established. *See Gilliard*, 302 F. Supp. 3d at 270 (noting that courts can "explore the plaintiff's *prima facie* case at the dismissal stage to determine whether the plaintiff can ever meet her initial burden" (cleaned up)); *cf. Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011) (noting that when "resolv[ing] a motion to dismiss for failure to state a claim," the question is not whether the plaintiff will "ultimately prevail," but whether the allegations are "sufficient to cross the federal court's threshold" (cleaned up)).

Ms. Richardson's allegations suffice at this stage. She raises an inference of discrimination by alleging "that she was treated differently from similarly situated employees who are not part of the protected class." *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005). Ms. Richardson's allegations about her white colleague, Sergeant Dauphin, who faced "no discipline" for making "racial slurs," Compl. ¶ 87, stands in stark contrast to her own experience being "taken out of service" (*i.e.*, fired) for two derogatory statements to a customer, *see id.* ¶¶ 76–78. To be sure, this single comparator may not ultimately carry the day for Ms. Richardson, but it is sufficient to survive a motion to dismiss. *See Ryan-White v. Blank*, 922 F. Supp. 2d 19, 24 (D.D.C. 2013) ("[S]ince discovery may reveal direct evidence of discrimination, it would be 'incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits.'" (quoting *Swierkiewicz*, 534 U.S. at 511–12)); *see also Swierkiewicz*, 534 U.S. at 510–511 ("Before discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case."). As Ms. Richardson herself points out, "discovery may well show many more valid comparators," Pl.'s Opp'n at 21, and substantiate her claims.

### B.  Retaliation (Counts 2, 4, and 6)

Ms. Richardson also argues that Amtrak retaliated against her for protected activity under Title VII, *see* Compl. ¶¶ 108–18, Section 1981, *id.* ¶¶ 131–40, and the DCHRA, *id.* ¶¶ 164–177. Title VII's anti-retaliation provision prohibits retaliation where an employee "'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 56 (citing 42 U.S.C. § 2000e-3(a)); *see also Rochon v. Gonzales*, 438 F.3d 1211, 1215 (D.C. Cir. 2006) (noting that § 2000e-3(a) applies to the federal government through § 2000e–16). Similarly, the

13

DCHRA makes it unlawful "to coerce, threaten, retaliate against, or interfere with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed . . . any right granted or protected under" the Act. D.C. Code § 2-1402.61(a). And Section 1981 prohibits retaliation for opposing racial discrimination, providing that all persons shall have the same right "to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981; *see Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 69–70 (D.C. Cir. 2015). The Court will again evaluate all three claims under the Title VII standard. *See Harris*, 791 F.3d at 68–69 (applying the same standard to retaliation claims under Title VII and 42 U.S.C. § 1981); *Gibson v. Kirkland & Ellis, LLP*, No. 23-cv-3371, 2025 WL 958241, at *4 (D.D.C. Mar. 31, 2025) (noting that "the analysis for DCHRA retaliation is the same for Title VII").

To state a prima facie case of retaliation under Title VII, a Plaintiff must show that (1) she engaged in statutorily protected activity, (2) the employer took an adverse employment action against her, and (3) a causal connection existed between the two. *Gibson*, 2025 WL 958241, at *4 (collecting cases). At the motion to dismiss stage, "the issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz*, 534 U.S. at 511; *see also Rochon*, 438 F.3d at 1220 ("[I]n order to survive a motion to dismiss, all [the] complaint has to say is [that] 'the [defendant] retaliated against me because I engaged in protected activity.'" (cleaned up)). The Court finds that Ms. Richardson's retaliation claim under Section 1981 survives this liberal pleading standard, but it dismisses her claims under Title VII and the DCHRA.

### 1. Protected Activity

Ms. Richardson alleges that she "formally complained about Captain Dawn Cook's conduct at least three times between January 5, 2023, and May 18, 2023." Compl. ¶ 93. "[A]n

14

activity is protected for the purposes of a Title VII retaliation claim if it involves opposing alleged discriminatory treatment by the employer or participating in legal efforts against the alleged treatment." *Belov v. World Wildlife Fund, Inc.*, No. 21-cv-1529, 2021 WL 4773236, at *5 (D.D.C. Oct. 13, 2021) (cleaned up). "While no magic words are required, the complaint must in some way allege unlawful discrimination—that is, discrimination on the basis of a protected characteristic." *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 89 (D.D.C. 2010) (cleaned up). Here, Ms. Richardson engaged in protected activity when she reported alleged racial discrimination by Captain Cook. *See* Compl. ¶ 32. But she made those reports between January and mid-May 2023, *see id.* ¶ 93, and events that occurred prior to May 28, 2023, may not form the basis for Ms. Richardson's Title VII or DCHRA claims, *see supra*, at 7–8. So while Ms. Richardson has adequately alleged that she engaged in statutorily protected activity for her Section 1981 retaliation claim, she has not done so for her Title VII and DCHRA claims.

### 2. Adverse Action

An employee pleading retaliation must show that "she engaged in protected activity, as a consequence of which her employer took a materially adverse action against her." *Taylor v. Solis*, 571 F.3d 1313, 1320 (D.C. Cir. 2009) (cleaned up). "A materially adverse action is one that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 57). This inquiry is "fact-specific" and "highly contextual." *Lawrence v. Lew*, 156 F. Supp. 3d 149, 164 (D.D.C. 2016) (cleaned up).

Ms. Richardson relies on several alleged adverse actions to sustain her retaliation claims, including "denial of employment opportunities, forced work when injured, unwarranted criticisms, coerced transfer of work assignments, letters of instruction, which are a form of discipline, and, ultimately, termination of [her] employment." Compl. ¶ 33. Her complaint also details various

disciplinary actions that Amtrak took, including a "verbal warning" and "letter of counseling" related to tardiness, *id.* ¶ 53–54, a "notice of discipline" regarding her alleged "derogatory" statement to a customer, *id.* ¶ 59, and being "taken out of service" for "rudeness and use of force," *id.* ¶ 78. Amtrak argues that actions that occurred between January 5, 2023, and May 28, 2023, may not support Ms. Richardson's retaliation claim because she failed to comply with the statutory filing requirements. Mot. Dismiss at 12 n.10. But the statutory time bars apply only to the Title VII and DCHRA claims; all of Ms. Richardson's allegations are fair game for the Section 1981 claim. *See supra*, at 7–8.

Ms. Richardson's allegations that she was terminated and passed over for a promotion easily satisfy the materially adverse action standard. *See Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) ("Typically, a materially adverse action in the workplace involves 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" (quoting *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003))); *see also Blackmon-Malloy v. U.S. Capitol Police Bd.*, No. 01-cv-2221, 2024 WL 4298853, at *15 (D.D.C. Sept. 26, 2024) (referring to a failure to promote as "a classic indication of material adversity"); *Rogers v. Voltron Data, Inc.*, No. 24-cv-84, 2024 WL 4647644, at *8 (D.D.C. Oct. 31, 2024) (holding that the plaintiff's termination "plainly represents materially adverse employment action").

Her remaining allegations are a closer call. Typically, "formal criticisms or reprimands, without additional disciplinary action such as a change in grade, salary, or other benefits, do not constitute adverse employment actions." *Stewart*, 275 F.3d at 1136 (citation omitted). But formal discipline can be an adverse action "if it serves as 'a building block' that justifies an adverse action down the road." *Holmes v. Wash. Metro. Area Transit Auth.*, 723 F. Supp. 3d 1, 17 (D.D.C. 2024);

16

*see, e.g.*, *Robb*, 2021 WL 3036796, at *13 (finding the plaintiff sufficiently pled that a letter of reprimand was a "building block" when it "l[ed] to an objectively tangible harm—her ultimate termination"). Here, Ms. Richardson alleges that some of the disciplinary actions Amtrak took— including a verbal warning and letter of counseling, Compl. ¶ 53–54, notice of discipline, *id.* ¶ 59, and removal from service, *id.* ¶ 78—factored into her lack of promotion and termination, *id*. ¶¶ 92 (noting that the "existence of disciplinary papers in her file for the incidents and matters described above . . . precluded or suppressed consideration of her for promotions"), 79 (noting that "a disciplinary hearing was conducted that reviewed [three prior disciplinary incidents]"). Thus, even if those actions would not have been adverse actions on their own, they served as "building blocks" for her lack of promotion and ultimate termination.

But the same is not true of the remaining alleged actions: unwarranted criticisms, letters of instruction, transfer of work assignments, and being forced to work when injured. Compl. ¶ 33. Ms. Richardson does not allege that any of these actions led to her lack of promotion or termination. In fact, she provides no details about the "letters of instruction." *Id.* And a general allegation of "unwarranted criticisms*," id.* ¶ 33, is a "purely subjective" injury that does not meet the adverse action requirement, *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006); *see also Blackmon-Malloy*, 2024 WL 4298853, at *15 (noting that "petty slights [and] minor annoyances . . . do not rise to the level of material adversity necessary for a retaliation claim" (cleaned up)).

### 3. Causation

Finally, turning to causation, "traditional principles of but-for causation" apply to Title VII retaliation claims, *Segal v. Harris Teeter Supermarkets, Inc.*, No. 15-cv-1496, 2016 WL 7223273, at *8 (D.D.C. Dec. 13, 2016), meaning that the plaintiff must show "that the unlawful retaliation

17

would not have occurred in the absence of the alleged wrongful action or actions of the employer," *id.* (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)). To meet this requirement, "a plaintiff may submit direct evidence of retaliation" or "may allege facts supporting an inference of retaliation[.]" *Blackmon-Malloy,* 2024 WL 4298853, at *11 (cleaned up). A causal relationship between the protected activity and the adverse action "may be inferred through either temporal proximity or the existence of a pattern of antagonism." *Román v. Castro*, 149 F. Supp. 3d 157, 169 (D.D.C. 2016) (citing *Taylor*, 571 F.3d at 1322–23). And at the motion to dismiss stage, "the hurdle of alleging a causal link is not a high one[.]" *Doe 1 v. George Wash. Univ.*, 369 F. Supp. 3d 49, 79 (D.D.C. 2019) (citation omitted).

Although there is no direct evidence of retaliatory intent, the Court finds sufficient circumstantial evidence at the motion to dismiss stage. Starting with temporal proximity, it can "support an inference of causation, . . . but only where the two events are 'very close' in time[.]" *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)). Ms. Richardson complained about Captain Cook's behavior between January 5, 2023, and May 18, 2023. *See* Compl. ¶ 93. Those complaints are too far detached from her March 13, 2024, termination, *id.* ¶¶ 86, 88, to establish temporal proximity on their own. *See, e.g.*, *Ho v. Garland*, 106 F.4th 47, 52 (D.C. Cir. 2024) (explaining that although "neither the Supreme Court nor this [Circuit] has established a bright-line rule" for temporal proximity, "the Supreme Court has cited circuit decisions suggesting that in some instances a three-month period between the protected activity and the adverse employment action may, standing alone, be too lengthy to raise an inference of causation"); *see also Clark Cnty. Sch. Dist.*, 532 U.S. at 274 (concluding that a gap of "20 months . . . suggests, by itself, no causality at all"). And Ms. Richardson has not provided enough information about her lack of promotion for the Court to

assess temporal proximity. *See* Compl. ¶¶ 91–92 (explaining that she was not promoted to Seargeant even though she "passed the promotional test with the second highest score out of 54 test takers" and "the highest of any of the Washington, D.C. test takers," but neglecting to including any allegations about timing); *see Johnson v. DeJoy*, No. 23-cv-2342, 2024 WL 4215557, at *8 (D.D.C. Sept. 17, 2024) ("When the chief evidence relied upon by the plaintiff to establish the causal connection is the temporal proximity, courts have, at a minimum, required the plaintiff to plead specific dates of the protected activity and the adverse action.").

But the lack of temporal proximity does not doom Ms. Richardson's retaliation claim. Accepting her allegations as true, she has raised an inference of causation based on the "existence of a pattern of antagonism." *Román*, 149 F. Supp. 3d at 169 (citation omitted); *see also Ho*, 106 F.4th at 52 (The plaintiff's complaint did "not rely solely on the timing of his non-selection in relation to his EEO complaints. He pled several other facts . . . that together support an inference of causation."). Ms. Richardson alleges that a "stream of negative actions" actions followed her complaints about Captain Cook, Compl. ¶ 33, including disciplinary action, *see id.* ¶¶ 53–54 ("verbal warning" and "letter of counseling" in May 2023 related to tardiness), 59 ("notice of discipline" regarding alleged "derogatory" statement to a customer in August 2023), 78 (being "taken out of service" for "rudeness and use of force" in February 2024), and other actions, including being forced to work when injured, *id.* ¶¶ 42–45 (alleging that she was forced to attend a firearm training in February 2023 while still recovering from hand surgery), and being disallowed from "tak[ing] on light administrative duty" in April 2023 after her injury, *id.* ¶ 47. And her Complaint raises an inference that Captain Cook weaponized one of these incidents against her. *See id.* ¶ 74 (alleging that Captain Cook "convinced" Amtrak's police inspector to change his position on Ms. Richardson's use of force). Courts have found causation satisfied through the

19

pattern-of-antagonism theory in similar circumstances. *See, e.g.*, *Román*, 149 F. Supp. 3d at 169 (finding causation where adverse actions "occurred against a backdrop of a cycle of protected activity and repeated adverse personnel actions"); *Rogers*, 2024 WL 4647644, at *2, 9 (finding a pattern of antagonistic activity when a supervisor "attacked [the plaintiff] on email chains," "removed [her] from projects," and "disinvited her from key leadership meetings").

Whether Ms. Richardson can ultimately carry her burden and prevail on her retaliation claim will depend on the facts "unearthed" by discovery. *Swierkiewicz*, 534 U.S. at 507. Amtrak may well produce evidence of legitimate, non-discriminatory reasons for its decisions. But at the motion to dismiss stage, the likelihood of a plaintiff's success is irrelevant. *See Munro v. LaHood*, 839 F. Supp. 2d 354, 363 (D.D.C. 2012) ("Despite these doubts as to whether plaintiff will ultimately be able to prove that he suffered an adverse employment action, the Court finds that plaintiff's allegations are sufficient to survive a motion to dismiss."). The Court is satisfied that Ms. Richardson has alleged facts sufficient to raise an inference of retaliation.

## CONCLUSION

For these reasons, the Court denies the Defendants' Motion to Dismiss, ECF No. 9, as to Count 1 (discrimination under Title VII), Count 3 (discrimination under Section 1981), Count 4 (retaliation under Section 1981), and Count 5 (discrimination under the DCHRA), and grants the motion as to Count 2 (retaliation under Title VII) and Count 6 (retaliation under the DCHRA).

A separate order will issue.

SPARKLE L. SOOKNANAN
United States District Judge

Date:   June 3, 2025